## UNITED STATES v. HORMAN.*

### (District Court, S. D. Ohio.  April 6, 1901.)

### No. 444.

**1. POST OFFICE—USING MAILS TO DEFRAUD—INDICTMENT.**

An indictment under Rev. St. § 5480, as amended March 2, 1889 [U. S. Comp. St. 1901, p. 3696], alleging that defendant devised a scheme to defraud certain persons out of large sums of money, in pursuance of which scheme letters were sent through the mails, threatening to accuse said persons of crimes and disgraceful matters, which threats were not to be carried out if said money was paid as the price of silence, states a case of what is commonly called "blackmail," and is a scheme to defraud, and a crime, under said section of the United States statutes.

On Demurrer to the Indictment.

H. M. Rulison and Thos. Darby, for the demurrer.

W. E. Bundy, U. S. Atty., and S. T. McPherson and E. P. Moulinier, Asst. U. S. Attys.

THOMPSON, District Judge.   I come now to the important question in the case,—whether the facts stated in these indictments show that any offense has been committed, either under section 5440 [U. S. Comp. St. 1901, p. 3676] or under section 5480 [U. S. Comp. St. 1901, p. 3696].   It is claimed that the facts stated do not constitute an offense within the provisions of either of those sections, and the point is this: that the facts stated show that a scheme was devised, not for the purpose of obtaining money from Douglass by persuading him, through deceit and misrepresentation, to voluntarily part with his money, but to induce him, through fear, to pay the money as the price of immunity from threatened attack upon his character; being the difference between a voluntary and an involuntary payment of money, the one induced by false persuasions, the other by threats.   Now, if this case was presented to one of the courts of the state of Ohio, there would be no question but that the objection made here would be well taken, because under the laws of Ohio the facts stated would constitute the offense or crime of blackmail; but no such offense or crime is recognized by the laws of the United States, nor was any such crime or offense known to the common law.   And the question to be decided here is whether this scheme is such a one as is contemplated by section 5480 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696], to wit, a scheme to defraud.   The offense defined by section 5480 [U. S. Comp. St. 1901, p. 3696] is one against the postal laws of the United States, and the policy of this statute is to prevent the misuse of the mails of the United States,—the prostitution of the mails of the United States in furtherance of dishonest schemes. The government intends that the post-office establishment shall be used by the people for the purposes of legitimate business and social

*Affirmed by circuit court of appeals, 116 Fed. 350.

intercourse, and that it shall not be used for the purpose of furthering dishonest schemes or practices, or for disseminating immoral and indecent literature. All such matter and kindred matter are declared by the laws of the United States to be nonmailable. Now, in the restricted sense in which the word "defraud" is ordinarily used in legal proceedings, the scheme set forth in these indictments would not be a scheme to defraud, but, in a broader sense, any scheme by which it is sought to obtain another man's money wrongfully, without giving him any equivalent for it, is a scheme to defraud; and I think that, fairly construed, this law found in section 5480 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696] prohibits the use of the mails for any such purpose. The word "defraud" is defined by Bouvier as follows: "To defraud is to withhold from another that which is justly due to him, or to deprive him of a right, by deception or artifice." And any artifice, any trick, any scheme, by which a man is induced to part with his money, either voluntarily, in hope of some benefit, or involuntarily, through fear, in the broad sense I have indicated, is a scheme to defraud, within the policy of this law.

Now, in this case [Weeber v. U. S.], decided by Judge Brewer [C. C.] 62 Fed. 740, while the precise point does not seem to have arisen there, and although there was an element of deception in that case which is not present in the one at bar, yet the purpose there was to be accomplished by blackmailing. It was a scheme to collect a pretended debt, which never existed, by putting the man in fear, and inducing him to pay a price to avoid the danger threatened against him. The defendant there caused to be passed through the mails a letter purporting to be from the United States district attorney to himself (defendant was a lawyer, and had the claim for collection) in reference to the furnishing of testimony to show Stephens liable to the government, and then caused the letter thus passing through the post office to be sent to Stephens by one apparently a stranger; the intention and expectation being that thereby Stephens would be frightened—blackmailed—into paying the claim of Kearney, in defendant's hands for collection, in order to prevent any disclosures by defendant to the United States district attorney. Now, there was a scheme to obtain money from Stephens, the victim, which was not due or owing to the claimant, Kearney; and it was to be accomplished by threatening Stephens,—by operating upon his fears so that he would not voluntarily, but involuntarily, part with his money, as the price of protection against disclosures to the district attorney which might affect him hurtfully in a case then pending in the United States court against him. So that if the decision in that case is in accordance with the true construction of this section, it does away with the distinction which I have been suggesting between money obtained through fear and money obtained through persuasion; being the broad line of distinction between blackmail and fraud. The narrow construction claimed for this law would permit the use of the mails to further every dishonest scheme to obtain money and property which would not fall strictly.

within the definition of fraud; and the misuse of the mails to further schemes by which men are bullied, frightened, and driven, through fear of unenviable notoriety, public criticism, or newspaper attack, to pay money, as the price of being delivered therefrom, would go unpunished.

I confess that when the question was first presented I was inclined to think that the demurrer was well taken; but, considering the policy of this law, and the broad purposes it was intended to serve, in preventing the prostitution of the mails of the United States in furtherance of dishonest schemes or practices of any kind, I have reached the conclusion that the objection is not well founded, and that the motions to quash and the demurrers to these indictments should be overruled, and the case set down for trial.